No. 21,505.

UNION PACIFIC RAILROAD COMPANY, *Appellee*, v. WAYNE J. DAVENPORT, ADOLPH FICK and OALUS GROSSFIELD, *Appellants*.

SYLLABUS BY THE COURT.

PUBLIC LANDS—*Congressional Grant—Railroad Right of Way—Vested Title—Adverse Possession*. The Union Pacific Railroad Company, by the grant to its predecessors in interest under the act of congress of July 1, 1862 (12 U. S. Stat. at Large, ch. 120, p. 489), and the amendatory act of July 2, 1864 (13 U. S. Stat. at Large, ch. 216, p. 356), became the owner in fee of a right of way two hundred feet from the center of the track, which right is superior to claims initiated after the act of 1864, and is not defeated by adverse possession. The grant is of the land itself and not a mere right of passage over it.

Appeal from Gove district court; JACOB C. RUPPENTHAL, judge. Opinion filed February 9, 1918. Affirmed.

*A. D. Gilkeson,* of Hays, for the appellants.

*R. W. Blair, T. M. Lillard,* and *A. M. Hambleton,* all of Topeka, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The plaintiff brought this suit to recover possession of the outer one hundred and fifty feet of its right of way on each side of its track through the lands of the defendants. It recovered judgment, and the defendants appeal.

The petition pleaded the various acts of congress granting to the Leavenworth, Pawnee & Western Railroad Company, a right of way 400 feet wide, being 200 feet on each side of its tracks through the lands in question and other lands, and the facts showing that the plaintiff is the successor in interest of the original grantee of the right of way. The answer alleged that defendants are the owners in fee simple of the lands in controversy and have been in the open, notorious, and exclusive possession thereof for many years. The case was tried on an agreed statement of facts, and the court found the facts and made conclusions of law. The essential facts are that all the lands involved were public lands and unpatented on July 2, 1864, at the time of the passage of the act of congress amendatory to the act of July 1, 1862, granting the right of way to the plaintiff's predecessor in interest. The defendants are the owners of the tracts in controversy, under patent titles from the United States. The Union Pacific Railroad Company has fenced 100 feet of its right of way, and the defendants, for more than fifteen years past, have used the outer 150-foot strip for farming purposes in the same manner they have used the other portions of their tracts. On June 24, 1912, congress passed an act entitled:

"An act legalizing certain conveyances heretofore made by the Union Pacific Railroad Company."

The act contains a provision—

"That in all instances in which title or ownership of any part of said right of way heretofore mentioned is claimed as against said corporation[s], or either of them, or the successors or assigns of any of them, by or through adverse possession of the character and duration prescribed by the laws of the State in which the land is situated, such adverse possession shall have the same effect as though the land embraced within the

lines of said right of way had been granted by the United States absolutely or in fee instead of being granted as a right of way." (Part 1, 37 U. S. Stat. at L., ch. 181, p. 138.)

Upon the passage of this act the plaintiff started in to take actual and exclusive possession of the entire width of 400 feet of right of way, and the defendants refused to surrender possession of the outer 150-foot strip of land on each side of the track. As conclusions of law, the court held that by the use of such strips for agricultural purposes and grazing the defendants gained no permanent rights adverse to the plaintiff prior to the bringing of the action.

The court further held that,

"At times and places the plaintiff does not have actual use and need of the immediate and present use of the entire 400 feet of the right of way, for the operation of its railroad, but it must remain the judge as to how much of a strip it needs from time to time, and at what places along its railroad, and to what extent as to time and place it may permit a part of its right of way of 400 feet to be used for agricultural purposes, if under the grant by congress any right at all is possessed by any one to use any part of the right of way for any purpose not directly connected with the business and operation of the railroad."

Among the reasons for so holding, the court found that—

"No court can say as to any particular strip or part of the right of way, that the time will never come when the whole 400 feet at a given point on the railroad will be needed for some proper purpose in connection with the operation of the railroad."

The court further found that it is not necessary, in order to hold the right of way to its full width of 400 feet, that plaintiff should occupy all the strip "with rails, ties, cuts or fills, buildings or structures or camps," or materials awaiting use on the railroad, or that it should break the surface of the earth and use all or parts thereof for fills and ballast or otherwise.

The sole question involved is: Who is entitled to the possession and use of these strips of land? The defendants contend that the grant under the acts of congress is merely an easement; that whenever it is not in actual use for the purposes of a right of way, the possession and use thereof vest in the owner of the fee, and that if it were abandoned by the company it would become a part of the fee. It is urged that before the company can recover possession it must show that the entire portion of the 150-foot strip of land on each side of its fences

is necessary for railway purposes; and that because the railway company has offered to lease the use of the land to the defendants until such time as it should become necessary for railway purposes, it has virtually shown an abandonment of all the land in controversy, and that the right to the exclusive, continuous use and possession thereof can only be obtained by actual use for railway purposes.

The question is not a new one, and no useful purpose would be served by reviewing at length the authorities which completely answer the contentions raised by the defendants. In *Railway Co. v. Watson*, 74 Kan. 494, 87 Pac. 687, which involved a similar grant, it was held that the railway company acquired a right of way 200 feet wide through the Osage Ceded Lands in this state, and that the act of congress granting the right of way "was an absolute grant *in præsenti*, vesting title from the date of the passage of the act, and all persons subsequently purchasing any of such lands did so subject to, and with notice of, the railroad company's rights." (Syl. ¶ 1.) It was also held that, "Private individuals cannot acquire title by adverse possession to any portion of the right of way named." (Syl. ¶ 3.) In that case, the district court made a finding to the effect that the railway company had abandoned all claim to that part of its right of way lying more than 50 feet from the center of its track, and that defendant had become the owner thereof by adverse possession. This court held that the facts found by the trial court were insufficient to devest plaintiff of its title and right of possession, citing *Northern Pacific Ry. v. Townsend*, 190 U. S. 267, where it was said:

"'In determining whether an individual, for private purposes may, by adverse possession, under a state statute of limitations, acquire title to a portion of the right of way granted by the United States for the use of this railroad, we must be guided by the doctrine enunciated in *Packer v. Bird*, 137 U. S. 661, 669, and approvingly referred to in *Shively v. Bowlby*, 152 U. S. 1, 44,' [p. 270]." (p. 511).

Subsequently the supreme court of the United States, in *Stuart v. Union Pacific R. R. Co.*, 227 U. S. 342, rendered a decision involving the questions raised here, and held that—

"Under the acts of 1862 and 1864 the Kansas Pacific Railway Company [of which the plaintiff is successor in interest] had authority to build west of the one hundredth meridian to Denver and was entitled to

a right of way two hundred feet from the center of the track, and that right is superior to claims initiated after the act of 1864, even if prior to the construction of the road; and this right is not defeated by adverse possession." (Syl.)

In *Railway Co. v. Watson*, supra, the court disapproved a statement in the opinion in *U. P. Rly. Co. v. Kindred*, 43 Kan. 134, 23 Pac. 112, wherein it was said that the railway company got only an easement and did not own the fee. Referring to the Kindred case it was said:

"The term 'easement' was not, perhaps, strictly accurate. The estate granted to the Union Pacific company is corporeal in character rather than incorporeal, and corresponds to the limited fee for particular uses, subject to reverter, described in the Townsend case." (p. 518.)

Among other decisions holding that the land itself, and not, technically speaking, a "right of way," was granted by similar acts of congress, are *Missouri, Kansas & Texas R'y Co. v. Roberts*, 152 U. S. 114; *New Mexico v. United States Trust Co.*, 172 U. S. 171. In the latter case, referring to the character of the grant, it was said:

"That is, the land itself—not a right of passage over it. So this court in *Missouri, Kansas & Texas Railway v. Roberts*, 152 U. S. 114, passing on a grant to one of the branches of the Union Pacific Railway Company of a right of way 200 feet wide, decided that it conveyed the fee." (p. 182.)

The act of congress cannot be given the same construction as a warranty deed conveying a strip of land to a railroad company for right of way, as held in *Abercrombie v. Simmons*, 71 Kan. 538, 81 Pac. 208; nor can it be construed by the rules of construction applied by state courts to condemnation proceedings under statutes of a state, or to grants for railway purposes by a state.

"The courts of the United States will construe the grants of the general government without reference to the rules of construction adopted by the States for their grants." (*Shively v. Bowlby*, 152 U. S. 1, 44.)

As said in *Railway Co. v. Watson*, supra,

"The decision of this court must therefore be controlled by the views of the supreme court of the United States respecting the nature of congressional grants of the character of the one in quesion." (p. 511.)

The judgment is affirmed.

DAWSON, J. (concurring specially): I concur in the opinion and judgment for the simple reason that the supreme court of the United States has held squarely and repeatedly that the lands granted by congress to the Pacific railroads for railway rights of way are not subject to alienation by adverse possession or otherwise, but must be retained by the railroads for railway purposes as the gradually expanding needs of the railroads may require. And when, pursuant to popular agitation on this subject a few years ago, congress considered this matter, it found that the best it could do was to permit the various state laws relating to adverse possession to operate in the future, but not retroactively, and that those parts of the rights of way not yet occupied for railway purposes could not arbitrarily be taken from the railroads and gratuitously conferred upon the adjacent landowners who had so long occupied these lands and treated them as their own.

I am authorized to say that Mr. Justice WEST and Mr. Justice MARSHALL join in this special concurrence.