UNITED STATES v. KANSAS CITY, KAN. et al.

No. 3339.

Circuit Court of Appeals, Tenth Circuit.

Dec. 6, 1946.

---

Dwight D. Doty, of Washington, D. C. (David L. Bazelon, of Washington, D. C., Peter F. Caldwell, of Topeka, Kan., and Roger P. Marquis, of Washington, D. C., on the brief), for appellant.

William Drennan and Alton H. Skinner, both of Kansas City, Kan. (Joseph A. Lynch and Charles W. Lowder, both of Kansas City, Kan., on the brief), for appellees.

Before PHILLIPS, Circuit Judge, and BROADDUS and CHANDLER, District Judges.

## BROADDUS, District Judge.

This proceeding was brought in the United States District Court for the District of Kansas at the request of the Secretary of War, to condemn a perpetual easement for construction, operation, maintenance and control of an electric transmission line over the strip of land from a power plant in the State of Missouri to the Sunflower Ordnance Works in Johnson County, Kansas. A portion of the way sought by the action was over the streets, byways and other property of the City of Kansas City, Kansas. The taking was pursuant to Title II of the Second War Powers Act, authorizing the Secretary of War to acquire by condemnation any interest in real estate that might be deemed necessary for war purposes and to dispose of such property by sale or otherwise.[1]

The procedure of the action conformed to the practice in the District Courts of the State of Kansas, courts of record of such state, as directed by the Act of August 1, 1888, 25 Stat. 357, 40 U.S.C.A. § 258. Under such procedure upon the filing of the petition the judge shall determine the petitioner's power of eminent domain and the necessity for the taking. Upon an affirmative finding on those issues, the judge must appoint appraisers to assess the damage to the owner and other interested parties. The appraisers are required to give adequate notice to all interested parties and at the time and place fixed therein, to view the property and assess the damage caused by the taking. Within thirty days after the filing of appraisement, the petitioner must pay the amount thereof into court, and when such amount is paid, the title and possession vests in the condemnor. G.S.Kan. 26-101. If any interested party be dissatisfied with the appraisement, such party may within thirty days file a notice of appeal with the clerk of the court, and the proceeding is then docketed and tried the same as any other case. G.S.Kan. 26-102.

This appeal involves the right of way secured over the streets and property of the City of Kansas City, Kansas. The substantive question presented is whether, when the designated public authority has

---

[1] The pertinent part of the Act provides: "The Secretary of War, the Secretary of the Navy, or any other officer, board, commission, or governmental corporation authorized by the President, may acquire by purchase, donation, or other means of transfer, or may cause proceedings to be instituted in any court having jurisdiction of such proceedings, to acquire by condemnation, any real property, temporary use thereof, or other interest therein, together with any personal property located thereon or used therewith, that shall be deemed necessary for military, naval, or other war purposes, such proceedings to be in accordance with the Act of August 1, 1888 (25 Stat. 357), or any other applicable Federal statute, and may dispose of such property or interest therein by sale, lease, or otherwise, in accordance with section 1 (b) of the Act of July 2, 1940 (54 Stat. 712). * * *" Act of August 18, 1890, c. 797, 26 Stat. 316, as amended by the Acts of July 2, 1917, c. 35, 40 Stat. 241, April 11, 1918, c. 51, 40 Stat. 518, 50 U.S.C.A. § 171, and March 27, 1942, c. 199, 56 Stat. 177, 50 U.S.C.A. § 171a, 50 U.S.C.A.Appendix, § 632.

determined the necessity of condemning a perpetual easement for specific public use, the perpetual nature of the easement may be limited to the duration of its use by the condemnor, in this case the United States of America. The City of Kansas City, Kansas challenges the right to consider the question, asserting that the Government has failed to perfect a timely appeal from a ruling of the trial court decisive of such issue in the giving of supplemental instructions to the appraisers, and other rulings of the same tenor.

In the course of the action the City applied for, and received, on October 3, 1944, supplemental instructions to the appraisers to the effect that in acquiring the easement the Government secured no assignable interest; that the easement terminated when the Government's use ceased, and that the City therefore was not entitled to any damages. Complying with the ruling it had secured, the City disclaimed any right to damages by reason of the easement sought. Upon a subsequent motion of the Government to set aside the order embracing such instructions, another judge sitting in the case on November 13, 1944 refused to reconsider the supplemental instructions given. There was no appeal from either order. It is urged that the failure to appeal is a bar to consideration of the question though the ruling is embraced within the final entry of judgment from which an appeal was duly perfected.

The appraisers, pursuant to the supplemental instructions and sensible of the City's disclaimer, on August 23, 1945, filed an appraisement in which no damages were allowed the City. The Government filed notice of appeal from the appraisement within the time allowed by the Kansas statute. Upon that appeal, the Government presented in advance of trial the issue of the assignability by the Government of the easement and the court adhered to its former ruling. Thereafter, on March 25, 1946, on a hearing for the ascertainment of the amount of damages, the court found the issues of law to have been determined by its prior order upon the motion for such purpose heard in advance of trial, and that, as the City had disclaimed any right to compensation, there was no question of fact for decision, thereby with due consistency approving its former ruling. From such order this appeal resulted.

■■ We believe the City failed to understand the nature and effect of the supplemental instructions for the appraisers and the subsequent refusal to withdraw such instructions. Under the Kansas Statute, to which the Government was required to conform as nearly as practical, all proceedings prior to appraisers' assessment of damages from the taking are preliminary to the final action of the appraisers. No appeal is allowed from the determination of the condemnor's power to take or the necessity of taking and it is not until the result or affirmative ruling upon these issues are reflected in the final ascertainment by the appraisers of the damages that any of these preliminary rulings may be reviewed. The aggrieved party's only remedy is from and after the appraiser's award. It is equally sound that any related steps not specifically mentioned in the statute and taken to aid in a correct decision upon the ultimate question of the damages suffered, such as instructions to appraisers upon the measure of damages they must apply, do not become final until reflected in the appraisers' final assessment. That such is the force of the Kansas statute is borne out by the further provision that upon service of notice of appeal from the action of the appraisers the case is docketed and tried as any other action that is anew. Missouri, K. & N. W. R. Co. v. Schmuck, et al., 79 Kan. 545, 100 P. 282; Chicago K. & N. R. Co. v. Broquet, 47 Kan. 571, 28 P. 717; Searcy v. State Highway Comm., 145 Kan. 709, 67 P.2d 534. All issues and rulings were as much before the court after appeal as before. Thus the final judgment upon trial de novo embraced the same issues, and as no appeal to a reviewing tribunal may be had until the final judgment on a trial de novo, there could have been no appeal until such judgment here. The duration of the proceedings or the steps occurring therein prior to the final judgment on the trial de novo are of no consequence in determining the time in which an appeal must be had.

 Likewise, the City's contention is in conflict with the federal and controlling rule on appealable orders. To prevent repeated appeals in the same litigation only final decisions are appealable. 28 U.S.C.A. § 225; Federal Rules of Civil Procedure, rule 54(a), 28 U.S.C.A. following section 723c; Saterlee v. Harris, 10 Cir., 60 F.2d 490; Demulso Corp. v. Tretolite Co., et al., 10 Cir., 74 F.2d 805; Crutcher v. Joyce, 10 Cir., 134 F.2d 809; Hopkins v. McClure, 10 Cir., 148 F.2d 67; Skirvin v. Mesta, 10 Cir., 141 F.2d 668. It is only when the judgment disposes of the case in its entirety that an appeal will lie; and an order entered upon a declaration of taking and a subsequent refusal to vacate such order in a condemnation proceeding are not appealable orders. The right of appeal in such proceedings does not depend upon and vary with the local rule in such respect. Catlin v. United States, 324 U.S. 229, 243, 65 S.Ct. 631, 89 L.Ed. 911; see Hopkins v. McClure, supra, 148 F.2d 70. The Catlin case presented substantially the same statutory law as considered here, and the ruling there charts the course to be followed. There was no disposal of this case in its entirety in the trial court until the final judgment of the court of March 25, 1946, in the trial de novo, and this court may review all issues, whether of law or of fact, included in that judgment.

 This brings us to the question of whether the court may limit the duration of the easement or confine its use to the condemnor; or more specifically, to the right of the Secretary of War to sell or assign the right of way of the sort described in the Declaration of Taking and Petition of Condemnation. There is no question of the propriety to exercise the right of eminent domain and no question may be reasonably raised of the extent of the estate sought by the Government. The right of way is to be perpetual—that is, everlasting. That is what the Government asks for and that is what it should have unless limited by law, for the right of eminent domain is an attribute of sovereignty and is inherent in the Government. Kohl, et al. v. United States, 91 U.S. 367, 23 L.Ed. 449; Boom Co. v. Patterson, 98 U.S. 403, 25 L.Ed. 206. The power may be employed in the aid of any of its constitutional activities and should in the event of war be employed in the National defense. Const. Art. I, Sec. 8; see United States v. Gettysburg Electric R. Co., 160 U.S. 668, 16 S.Ct. 427, 40 L.Ed. 576; Kohl v. United States, supra.

 The use being a public one, the quantity which should be taken (Shoemaker v. United States, 147 U.S. 282, 13 S.Ct. 361, 37 L.Ed. 170; United States v. Gettysburg Electric Co., supra) and the extent or sort of the estate to be acquired (Sweet v. Rechel, 159 U.S. 380, 395, 16 S.Ct. 43, 40 L.Ed. 188; United States v. Meyer, 7 Cir., 113 F.2d 387; Carmack v. United States, 8 Cir., 135 F.2d 196) are legislative questions and are not subject to judicial review. The decision of the officer designated to enforce the legislative will is also immune from judicial review. The court below, therefore, was in error in intervening to decree a different estate than the one determined as necessary by such designated officer.

 It is true the easement sought is perpetual only as long as devoted to the use for which it may be condemned but the use is not limited to the condemnor. On the contrary, it is of such nature that it may be assigned and may be continued in another. Lewis on Eminent Domain, (2d Ed.) Vol. 2, Sec. 859. This result is in complete accord with the provisions of the Second War Powers Act, supra, authorizing sale by the Secretary of War.[2] The federal statute declaring the substance of the law in defining the rights of the Government and the power of designated officers is controlling and may not be affected by the local law. United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336, 276, 87 63 S.Ct. However, there is no conflict here with the local law. An easement is an interest in land under the Kansas law (Schaff v. Roberts, 113 Kan. 423, 215 P. 447), and consequently subject to sale.

We are not passing upon the effect on the easement should it not be used for the purposes as defined by the Declaration of

---

[2] See Statute, Note 1.

Taking or the rights of a purchaser to use it for purposes other than those defined in the Declaration should the United States dispose of it. Neither of those questions is presented in this appeal. The easement defined in the Declaration of Taking may be sold and will continue after sale so long as used for the purposes for which it is sought to be condemned.

Reversed and remanded with instructions to proceed in accord with this opinion.

PHILLIPS, Circuit Judge (concurring).

Under 50 U.S.C.A.Appendix, § 632, the Secretary of War was authorized to acquire by condemnation the right-of-way here involved and to dispose of it by sale, lease, or otherwise, in accordance with § 1(b) of the Act of July 2, 1940, 54 Stat. 712, 50 U.S.C.A.Appendix, § 1171(b).

Section 1(b), supra, provides: "(b) The Secretary of War is further authorized, with or without advertising, to provide for the operation and maintenance of any plants, buildings, facilities, utilities, and appurtenances thereto constructed pursuant to the authorizations contained in this section and section 5, either by means of Government personnel or through the agency of selected qualified commercial manufacturers under contracts entered into with them, and, when he deems it necessary in the interest of the national defense, to lease, sell, or otherwise dispose of, any such plants, buildings, facilities, utilities, appurtenances thereto, and land, under such terms and conditions as he may deem advisable, and without regard to the provisions of section 321 of the Act of June 30, 1932 (47 Stat. 412)."

Under these sections, the United States was authorized to acquire the right-of-way and to retain it itself, or to dispose of it by lease, sale, or otherwise, when the Secretary of War deemed such sale or disposition necessary in the interest of the national defense. The power of the United States to acquire property by condemnation and transfer it to others in aid of the national defense cannot be doubted. United States v. Marin, 9 Cir., 136 F.2d 388, and cases there cited; City of Oakland v. United States, 9 Cir., 124 F.2d 959. See,

also, Brown v. United States, 263 U.S. 78, 44 S.Ct. 92, 68 L.Ed. 171.

What would be the effect on the easement if the United States should cease to use the easement itself, or should undertake to dispose of it to others for use other than in the interest of the national defense, is not here presented and need not be decided. It suffices to say that it was error to limit the life of the easement to the period it should be used by the United States and foreclose its right to dispose of the easement to another in the interest of the national defense.

CHANDLER, District Judge, concurs.